AETNA LIFE AND CASUALTY COMPANY
*v.* IRENE D. BULAONG ET AL.

GREGORY BULAONG *v.* AETNA LIFE
AND CASUALTY COMPANY
(14032)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

52

Argued January 10—decision released March 19, 1991

*Marjorie J. Berger,* with whom was *Kerry R. Calla-han,* for the appellant (Aetna Life and Casualty Company).

*Stuart M. Roth,* with whom was *Ann M. Siczewicz,* for the appellees (Irene D. Bulaong et al. and Gregory Bulaong).

BORDEN, J. In these combined appeals, Aetna Life and Casualty Company (Aetna) appeals from the judgments of the trial court denying its application to vacate an uninsured motorist coverage compulsory arbitration award and granting Gregory Bulaong's application to confirm the same award.[1] See General Statutes

---

[1] There were two separate trial court proceedings. Aetna sought to vacate the arbitration award, naming as defendants in its application to vacate Gregory Bulaong and his parents, Irene D. Bulaong and Rudolph G.

§ 38a-336. The arbitration award arose out of a claim by Bulaong for coverage for injuries he sustained while a passenger on a stolen motorcycle. Aetna claims that the trial court improperly (1) construed the phrase in the policy, "using a vehicle," to exclude riding as a passenger, and (2) confirmed the award because to so construe that phrase contravened public policy. We agree with Aetna with respect to its first claim. With respect to its second claim, however, we conclude that this record lacks the necessary factual underpinning and, therefore, that this issue must be determined in a new arbitration proceeding. Accordingly, we reverse the judgments.

Certain facts are not in dispute. On the morning of July 4, 1979, Gregory Bulaong was injured when a motorcycle on which he was riding as a passenger was involved in an accident. Sean Birmingham, the operator of the motorcycle, admitted having stolen it. Bulaong claimed, however, that he did not know that the motorcycle had been stolen.

The Bulaongs thereafter filed a claim with Aetna under the uninsured motorist coverage portion of their family's personal automobile policy, and sought to stack coverage under two other policies they maintained with Aetna. Aetna denied coverage under exclusion A.4 of the uninsured motorists coverage part of the policy for "[u]sing a vehicle without a reasonable belief that the person is entitled to do so."[2] Aetna maintained that as a passenger Bulaong was using the stolen motorcy-

Bulaong. Gregory Bulaong sought to confirm the award, naming Aetna as the defendant. The trial court denied Aetna's application to vacate, and granted the application to confirm. References herein to "Bulaong" are to the injured claimant, Gregory Bulaong.

[2] Exclusion A.4 provided: "A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person . . . 4. Using a vehicle without a reasonable belief that the person is entitled to do so."

cle without a reasonable belief that he was entitled to do so, within the meaning of the exclusion.

The Bulaongs demanded arbitration under the policy, and on January 23, 1989, a hearing was held before three arbitrators. Only Bulaong and Birmingham testified, and at the conclusion of the hearing the parties agreed to brief three issues.[3] On April 17, 1989, the arbitrators wrote to the parties requesting additional briefs on the following issue: "Is the term 'using' as used in this policy more or less restricting than the term 'occupying'?"[4]

On May 5, 1989, the arbitrators rendered their decision. Two of the arbitrators found as follows: (1) the motorcycle operated by Birmingham was an uninsured motor vehicle under the terms of Aetna's policy with the Bulaongs; (2) there were two other policies that Aetna maintained with the Bulaongs that, when stacked with the policy at issue, provided a total of $120,000 in uninsured motorist coverage to Gregory Bulaong, who was an insured because he was living at home with his parents; and (3) "[t]he claimant [Gregory

---

[3] The three issues were whether: (1) the exclusion claimed by Aetna was prohibited under then General Statutes § 38-175c or the regulations thereunder; (2) Bulaong was required to establish the absence of other available insurance; and (3) the Bulaongs' policies could be stacked.

[4] In the definitional section of the policy the term "occupying" was defined as follows: " 'Occupying' means in; upon; getting in, on, out or off." Exclusions A.1 and 3 of the Uninsured Motorists Coverage part of the policy excluded such coverage "for bodily injury sustained by any person: 1. While *occupying,* or when struck by, a motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. This includes a trailer of any type. . . . 3. While *occupying your covered auto* when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool." (Emphasis in original.) The term "occupying" was also used in other sections of the policy. By contrast, exclusion A.4 of the uninsured motorists coverage part of the policy, which was at issue before the arbitrators, excluded such coverage "for bodily injury sustained by any person . . . 4. *Using* a vehicle without a reasonable belief that the person is entitled to do so." (Emphasis added.)

Bulaong] was not 'using' the motorcycle operated by Sean Birmingham at said date and time within the definition of Exclusion A4 in said policies of insurance." The majority of the panel accordingly awarded Gregory Bulaong $120,000. The third arbitrator dissented as follows: "I hereby dissent from conclusion number 3 of this Finding and Award and would conclude, based upon the evidence offered at said hearing, that the claimant was 'using the vehicle without a reasonable belief that he was entitled to do so' within Exclusion A4."

Thereafter, Aetna filed an application to vacate the award, and Bulaong filed an application to confirm the award. The trial court heard both applications together, upon submission of only the arbitrators' decision, and the parties' memoranda of law and arguments in support thereof.

In its memorandum of law to the trial court, Aetna argued that: (1) the arbitrators' decision was subject to de novo review; (2) the arbitrators improperly construed the term "using" to exclude riding as a passenger; and (3) the award was against public policy because it awarded damages to one who had knowingly been engaged in illegal activity. Aetna's argument that the award was against public policy was based on its assertion that the arbitrators had determined as a factual matter that Bulaong knew the motorcycle had been stolen and, therefore, had been using the vehicle "without a reasonable belief that [he was] entitled to do so." The Bulaongs argued, on the contrary, that: (1) the issue of whether Gregory Bulaong was "using" the motorcycle was an issue of fact, not of law, and not subject to de novo review by the trial court; (2) the arbitrators properly found as a matter of fact that he was not using the vehicle; and (3) the award did not contravene public policy because the arbitrators did not find that he knew the vehicle had been stolen.

The trial court determined that "[t]he arbitrators' decision has created a legal, not a factual, question." The court reasoned that when the arbitrators ruled that Bulaong was not using the vehicle "within the definition of Exclusion A4," they had not found that he was not on the vehicle but "only that his presence on it was not a use under the" policy. That determination, the court concluded, was a legal question subject to de novo review. Undertaking that review, the court further concluded that because the policy differentiated between "occupying" and "using," and because of the accepted rule of construction of insurance contracts that, where there are two reasonable interpretations the court should adopt that which covers the loss, the term "using" did not include riding as a passenger. The court also rejected Aetna's public policy argument, stating that "Aetna has failed to sustain its burden of proof." In this connection, the court stated as follows: "There is no evidence or even argument that Bulaong ever had 'a reasonable belief' that either he or Birmingham had a right to use the stolen vehicle. The arbitrators by focusing on the word 'using' make it clear that a reasonable belief in the right to use was not found." The court, therefore, denied Aetna's application to vacate and granted Bulaong's application to confirm the award. Aetna appealed from the judgment to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023.

We first consider precisely what the arbitrators and the trial court did and did not decide. Despite Aetna's assertions to the contrary, the arbitrators did not decide the factual question of whether, when Bulaong was a passenger on the motorcycle, he was "without a reasonable belief that [he was] entitled to do so." Although the dissenting arbitrator clearly made such a finding, there is no indication in this record that the two majority arbitrators did so. Their decision was limited

to the conclusion that he was not "using" the vehicle within the meaning of the exclusion. They did not address the issue of whether he had a reasonable belief that he was entitled to do so.

Aetna argues that "[t]he trial court explicitly found that Gregory Bulaong never had a 'reasonable belief' that he was entitled to use the motorcycle on which he was riding." We disagree. First, the trial court could not properly have made a finding of such a disputed issue on the basis of the record submitted to it, consisting only of the arbitrators' decision, the parties' memoranda of law, in which Bulaong repeated his contention that the arbitrators had made no such finding, and oral argument by the attorneys. Second, the trial court's brief discussion of the issue in its memorandum of decision, while not perfectly clear, is certainly consistent, as the Bulaongs suggest, with a conclusion that the award was silent with respect to the issue of Bulaong's reasonable belief. It was, of course, incumbent upon Aetna as the appellant to seek to have the trial court clarify any ambiguity in its decision. *McLaughlin* v. *Bronson,* 206 Conn. 267, 277–78, 537 A.2d 1004 (1988) (appellant's responsibility to furnish adequate appellate record); see Practice Book § 4061.

Aetna also argues that the conclusion of the arbitrators that Bulaong was not using the vehicle necessarily implies that they found that he had no reasonable belief that he was entitled to do so, because without such a finding they would not have addressed the meaning of the term "using." This argument fails because it is at least equally plausible that, because the arbitrators concluded he was not "using" the vehicle, they determined that it was not necessary to address the issue of whether he had such a reasonable belief. Indeed, the lack of any reference in their decision to whether he had such a reasonable belief makes such a reading of their decision plausible.

We are confronted, therefore, with decisions of both the arbitrators and the trial court limited to the determination that Bulaong, as a passenger on the motorcycle, was not "using" the vehicle within the meaning of the exclusion. Aetna argues, and we agree, that the determination by the arbitrators and the trial court that Bulaong was not "using" the motorcycle presents a legal issue subject to de novo review by this court.[5]

Questions of law decided by arbitrators in compulsory arbitration proceedings pursuant to General Statutes § 38a-336 are subject to de novo review by the court. *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987). Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 583, 573 A.2d 699 (1990). Unlike certain other contracts, however, where absent statutory warranty or definitive contract language the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review; *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981) (purchase order); see also *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 608–609, 577 A.2d 709 (1990) (arbitration clause); construction of a contract of insurance presents a question of law for the court which this court reviews de novo. *Hammer* v. *Lumberman's Mutual Casualty Co.,* supra; *Gottesman* v. *Aetna Ins. Co.,* 177 Conn. 631, 634–37, 418 A.2d 944 (1979); see also *Schultz* v. *Hartford Fire Ins. Co.,* 213 Conn. 696, 702–703, 569 A.2d 1131 (1990); *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 274, 121 A.2d 622 (1956); *DeWitt*

---

[5] Although Bulaong argued in the trial court that the meaning of "using" in the exclusion was a factual question, he has not specifically reasserted that argument on appeal. He confines his discussion to the argument that the trial court properly construed the term "using."

v. *John Hancock Mutual Life Ins. Co.,* 5 Conn. App. 590, 593–94, 501 A.2d 768 (1985).[6] Although there may be cases where the interpretation of an insurance policy depends on factual questions; see, e.g., *Libero* v. *Lumbermens Mutual Casualty Co.,* 141 Conn. 574, 108 A.2d 533 (1954); this is not such a case. Here, it was factually undisputed that Bulaong was riding as a passenger on the motorcycle, and the only question of interpretation of the policy was whether "using" was intended to include or exclude that factual scenario. That issue presents a question of law, both for the trial court reviewing de novo the arbitrators' decision, and for this court reviewing de novo the trial court's decision.

We turn, therefore, to the question of whether the term "using" in exclusion A.4 of the policy was intended to include riding as a passenger on the motorcycle in question. Aetna argues that the term is one of ordinary and general meaning, and that it includes being a passenger. Bulaong argues that, because the policy specifically defines "occupying" to include being a passenger, "using" within the exclusion in question must have a more narrow meaning than mere occupancy as a passenger. In effect, Bulaong argues that "use" is synonymous with "operation." Bulaong alternatively argues that the term is at least ambiguous and therefore must be interpreted against its drafter to cover the loss. We agree with Aetna.

---

[6] The principle that the intent of the parties to an insurance contract, as contrasted with certain other contracts, presents a question of law rather than fact is consistent with at least two other situations where questions of intention are regarded as questions of law. See, e.g., *Connecticut National Bank & Trust Co.* v. *Chadwick,* 217 Conn. 260, 266, 585 A.2d 1189 (1991) (intent of testator as expressed in will presents question of law for court); *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982) (intent of language in deed presents question of law); *Expressway Associates II* v. *Friendly Ice Cream Corporation,* 22 Conn. App. 124, 127, 576 A.2d 575, cert. granted, 216 Conn. 811, 580 A.2d 56 (1990) (intent of language in deed is question of law).

The ultimate question of intent in this case involves a determination of what coverage the insured expected to receive and what coverage the insurer expected to provide as disclosed by the language of the policy. *Hammer* v. *Lumberman's Mutual Casualty Co.,* supra, 583. If the words are plain and unambiguous, they must be given their ordinary and natural meaning, and we do not force, ignore or distort provisions so as to give them a different meaning from how they were evidently intended by the parties. Id. If the language is ambiguous, however, the ambiguity must be resolved against the insurer. We will not torture language to find an ambiguity that the ordinary meaning does not disclose, however, and simply because the parties contend for different meanings does not necessitate a conclusion that the language is ambiguous. Id., 584. We conclude that the term "using" in exclusion A.4 of this policy is not ambiguous, and that given its ordinary and natural meaning it includes riding as a passenger.

The policy in question employs three terms which, depending on the context, may have overlapping meanings. Those three terms are "using" or "use," "occupying," and "operator." Of the three, only "occupying" is specifically defined in the policy: " *'Occupying'* means in; upon; getting in, on, out or off." (Emphasis in original.)

The terms "using" and "use" are employed throughout the policy, both in clauses defining coverage and in clauses defining exclusions from coverage.[7] By con-

---

[7] For example, under the "Liability" coverage part of the policy, a *"Covered person"* is defined to include "[a]ny person using *your covered auto"* (emphasis in original); but there is a specific exclusion for any person "[u]sing a vehicle without a reasonable belief that the person is entitled to do so." Similarly, under the "Medical Payments" coverage part of the policy, a covered person is defined to include certain persons while occupying "a motor vehicle designed for use mainly on public roads," but such coverage is excluded with respect to "a vehicle when it is being used in the business or occupation of a *covered person."* (Emphasis in original.) Also, under

trast, the term "occupying" does not appear in the liability coverage part of the policy, but is employed throughout the medical payments and uninsured motorist coverage parts of the policy, and in those parts it is employed in both clauses defining coverage and in clauses defining exclusions from coverage.[8] The term "operator" is employed primarily in disjunction with the term "owner," and its use is limited to the uninsured motorists coverage part of the policy.[9]

Although the meaning of policy language should ordinarily be drawn from the context in which it is used; see *Rathbun* v. *Aetna Casualty & Surety Co.*, 144 Conn. 165, 168, 128 A.2d 327 (1956); we can discern no contextual pattern in the employment of these terms that sheds particular light on whether "using" was intended to have a broader or narrower scope than "occupying." If anything, the more frequent and generalized employment of the terms "using" and "use" suggests that their meaning overlaps with and may exceed that of "occupying," depending on the factual situations to which the terms are applied. This construction comports, moreover, with the ordinary meaning of "using" as disclosed by dictionary sources, with our precedents

the "Uninsured Motorists" coverage part of the policy, such coverage is limited to damages that "arise out of the ownership, maintenance or use of the *uninsured motor vehicle*" (emphasis in original), but such coverage is excluded with respect to a person "[u]sing a vehicle without a reasonable belief that the person is entitled to do so."

[8] For example, medical payments coverage is afforded to any person "while *occupying your covered auto*" (emphasis in original), but such coverage is excluded with respect to persons "*occupying* a vehicle without a reasonable belief that the person is entitled to do so." (Emphasis in original.) Similarly, uninsured motorists coverage is afforded to any person "*occupying your covered auto*," (emphasis in original) but it is excluded for a person "*occupying your covered auto* when it is being used to carry persons or property for a fee." (Emphasis in original.)

[9] For example, such coverage is afforded for damages that a covered person is "entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury . . . ." (Emphasis in original.)

regarding its meaning, and with the weight of authority in other jurisdictions.

Webster's Third New International Dictionary discloses that one of the principal meanings of the verb "to use" is "to put into action or service: have recourse to or enjoyment of: employ." This meaning is consistent with "using" a vehicle as a passenger. Indeed, we commonly speak of "using" public transportation in precisely that sense; the same can easily be said of private transportation.

Our precedents also buttress this conclusion. We have held that " 'the "use" of an automobile by an individual involves its employment for some purpose or object of the user while its "operation" by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another.' " *Freeman* v. *Nationwide Mutual Ins. Co.,* 147 Conn. 713, 716, 166 A.2d 455 (1960), quoting *Maryland Casualty Co.* v. *Marshbank,* 226 F.2d 637, 639 (3d Cir. 1955); see also *Hogle* v. *Hogle,* 167 Conn. 572, 577, 356 A.2d 172 (1975) (accident " 'arise[s] out of . . . use' " of automobile for purposes of liability coverage if it " 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from' or 'was incident to' " use of automobile).

"[T]he weight of authority from other jurisdictions supports the proposition that passengers are users of a motor vehicle." *Sears* v. *Grange Ins. Assn.,* 111 Wash. 2d 636, 639, 762 P.2d 1141 (1988); see *Maryland Casualty Co.* v. *Marshbank,* supra, 639; *BASF Wyandotte Corporation* v. *Transport Ins. Co.,* 523 F. Sup. 515, 517 (E.D. Mich. 1981); *Home Indemnity Co.* v. *Lively,* 353 F. Sup. 1191, 1193 (W.D. Okla. 1972); *Orrill* v. *Garrett,* 100 Ill. App. 2d 194, 197, 240 N.E.2d 271 (1968);

*United States Fidelity & Guaranty Co.* v. *Farm Bureau Mutual Ins. Co.,* 2 Kan. App. 2d 580, 582, 584 P.2d 1264 (1978); *Baudin* v. *Traders & General Ins. Co.,* 201 So. 2d 379, 381 (La. 1967); *DeJarnette* v. *Federal Kemper Ins. Co.,* 299 Md. 708, 721–22, 475 A.2d 454 (1984); *Pappas* v. *Central National Ins. Group,* 400 Mich. 475, 481–82, 255 N.W.2d 629 (1977); *National Union Fire Ins. Co.* v. *Bruecks,* 179 Neb. 642, 648, 139 N.W.2d 821 (1966); *Indemnity Ins. Co. of North America* v. *Metropolitan Casualty Ins. Co.,* 33 N.J. 507, 513–14, 166 A.2d 355 (1960); *Hite* v. *Hartford Accident & Indemnity Co.,* 344 S.E.2d 173, 175 (S.C. App. 1986); *State Farm Mutual Automobile Ins. Co.* v. *Francis,* 669 S.W.2d 424, 427 (Tex. App. 1984); but see *Potomac Ins. Co.* v. *Ohio Casualty Ins. Co.,* 188 F. Sup. 218, 218 (N.D. Cal. 1960); *Dunlap* v. *Maryland Casualty Co.,* 242 Ark. 533, 535–37, 414 S.W.2d 397 (1967); *Auto-Owners Ins. Co.* v. *Jones,* 397 So. 2d 317, 319–20 (Fla. App. 1981). The commentators generally agree. " 'Use' is to be given its ordinary meaning. It denotes the employment of the automobile for some purpose of the user." G. Couch, Insurance (2d Ed.) § 45:321. "One may 'use' an automobile without personally operating it, as the term use is broader than operation." 6C J. & J. Appleman, Insurance Law and Practice (Buckley Ed. 1979) § 4354, p. 63.

Aetna also argues that the arbitrators' award contravened public policy because Bulaong was a passenger on a motorcycle that he knew was stolen. Thus, Aetna argues, the award contravened a purported "public policy [that] precludes the award of damages to a willing participant in an unlawful activity." This argument is based, however, on Aetna's assertion that the "trial court explicitly found that Gregory Bulaong never had a 'reasonable belief' that he was entitled to use the motorcycle on which he was riding." That asser-

tion founders, however, on our earlier conclusion that neither the arbitrators nor the trial court had made such a finding. Thus, that entire issue, together with any other issue that the arbitrators did not decide,[10] remains to be decided in what will necessarily be a second arbitration proceeding.[11]

The judgments are reversed and the case is remanded with direction to render judgments vacating the award.

In this opinion the other justices concurred.

---

[10] As indicated earlier; see footnote 3, supra; in addition to the scope of the term "using," the parties briefed three other issues to the arbitrators, namely, whether: (1) the exclusion on which Aetna relied is prohibited by General Statutes § 38-175c or the regulations thereunder; (2) the Bulaongs were required to establish the absence of other available insurance; and (3) the three policies could be stacked. It is clear that the arbitrators' decision implicitly decided the latter two of these issues adversely to Aetna, and since Aetna did not raise those issues in this case it accepted those determinations. It is equally clear, however, that the arbitrators did not decide the validity of the exclusion because of their decision that the exclusion did not apply. Thus, that issue may still be raised by Bulaong.

[11] General Statutes § 52-418 (b) governs the circumstances under which the court, upon vacating an award pursuant to § 52-418 (a), may order a rehearing by the same arbitrators. Section 52-418 (b) provides: "If an award is vacated *and the time within which the award is required to be rendered has not expired,* the court or judge may direct a rehearing by the arbitrators." (Emphasis added.) Presumably, that time has long since passed in this case. The court is confined, therefore, to vacating the award pursuant to § 52-418 (a), and the plaintiff is left with the option of initiating a second arbitration proceeding. Of course, the parties may agree, with the concurrence of the initial arbitrators, to conduct the second proceeding before the initial arbitrators.