[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The material facts of this action are not in dispute. On September 12, 1991, John Koch purchased a motorcycle. It was his intention to give the motorcycle to the plaintiff, Jason Nicholas at some date in the future. John Koch was an unrelated adult acquaintance of Jason Nicholas, who was only fifteen years old. Jason Nicholas drove the motorcycle numerous times that day despite being forbidden to do so, on more than one occasion, by his mother, Karen Nicholas. She had also directed John Koch not to let her son ride the motorcycle, but John Koch continued to do so. That evening, John Koch bought beer and vodka for Jason Nicholas and his friends to drink. Jason Nicholas became intoxicated and took the motorcycle, with the express or tacit permission of John Koch. While driving the motorcycle at a high rate of speed in the early morning hours of September 13, 1991, Jason Nicholas hit a guardrail and sustained severe injuries. CT Page 4362
Being only fifteen years old, Jason Nicholas had no driver's license. The motorcycle was also unregistered and uninsured. Jason Nicholas had stolen a marker plate earlier that day and put the stolen plate on the motorcycle. He knew that he did not have the permission of his mother to drive the motorcycle and that he could not lawfully drive a motorcycle which was unregistered, uninsured and had a stolen marker plate. He also knew that, at fifteen years of age, he could not lawfully drive and that it was unlawful to drive while under the influence of alcohol.
Karen Nicholas and Jason Nicholas have filed a two-count complaint against Amica Mutual Insurance Company (Amica), the automobile liability insurance carrier for Karen Nicholas. The first count seeks money damages under the uninsured motorist provisions of the policy and under General Statutes § 38a-336. The complaint alleges that the accident was caused by the negligence of John Koch in that he facilitated and allowed Jason Nicholas to become intoxicated and then permitted him to drive the motorcycle. The second count seeks to force arbitration of the dispute pursuant to the policy and General Statutes § 38a-336 (b).[1]
The defendant has answered, denying the allegations of the complaint. The defendant has also raised six special defenses. The first special defense alleges that, as the motorcycle was owned by Jason Nicholas, through gift, he does not fall under the insuring provisions of the policy. Similarly, the second special defense alleges that because Jason Nicholas was the owner of the motorcycle, he is excluded from coverage under another provision of the policy. The third special defense also claims that Jason Nicholas is excluded from coverage, as he operated the motorcycle without a reasonable belief that he was entitled to do so. The fourth special defense alleges that arbitration of the dispute is not required because arbitration is only authorized under the policy if both parties agree. The fifth special defense alleges that recovery by the plaintiffs would violate the public policy of the state, as Jason Nicholas committed several ultra vires acts. The sixth special defense alleges the contributory negligence of Jason Nicholas as a bar to recovery.
Amica has moved for summary judgment. The insurer claims that Jason Nicholas is not entitled to uninsured motorist coverage under the insuring portion of the policy. Amica also claims that an exclusion in the policy prevents coverage, as Jason Nicholas did not have a "reasonable belief that he was entitled to use the vehicle." In support of the motion, the defendant has filed a memorandum of law, a copy of the deposition of Jason Nicholas, the automobile insurance policy of Karen Nicholas and a copy of the complaint. In opposition, the plaintiffs have filed a memorandum. The plaintiffs have also filed a stipulation of facts, the defendant's motion for summary judgment containing a summary of facts and memorandum of law, and a ruling on a joint motion for remand CT Page 4363 and certification, all of which concern this action which had previously been removed to federal court.[2] The defendant has filed a reply memorandum. The defendant has also filed two memorandums addressed to the request to arbitrate the matter, contained in count two of the complaint. The plaintiff has filed a memorandum also addressed to the arbitration count.
Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp. , 233 Conn. 732,751, 660 A.2d 810 (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." Appleton v. Board of Education, supra, 209. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) United Oil Co. v. Urban DevelopmentCommission, 158 Conn. 364, 379, 260 A.2d 596 (1969).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . .a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." Maffucciv. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15
(1998). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Appleton v. Board of Education, supra, 254 Conn. 209.
The plaintiffs raise no genuine issue of material fact. The material facts are not in dispute. Summary judgment should, therefore, be granted if the defendant, Amica, is entitled to judgment as a matter of law, viewing the facts most favorable to the plaintiffs. Appleton v. Board ofEducation, supra, 254 Conn. 209.
 I
The defendant has moved for summary judgment on both counts of the complaint. The court must first address the claim as to the second CT Page 4364 count, wherein the plaintiff asks the court to enforce a request by the plaintiff to arbitrate the very dispute which is the basis of the first count. If summary judgment is denied as to the request to arbitrate, and the court thus rules that the issue should be arbitrated, the merits of the motion as to the first count need not be addressed, as arbitration may resolve the issue. If summary judgment is granted as to the second count, and the court thus rules that the matter should not be arbitrated, the merits of the motion as to the first count must be addressed.
"The arbitrability of a dispute . . . is a legal question for the trial court to decide as a threshold matter." Roberts v. Westchester FireInsurance Company, 40 Conn. App. 294, 297, 670 A.2d 892, cert. denied,236 Conn. 915, 673 A.2d 1142 (1996). "Arbitration is the voluntary submission, by the interested parties, of an existing or future dispute to a disinterested person or persons for final determination." (Citations omitted.) Gary Excavating, Inc. v. North Haven, 164 Conn. 119, 121,318 A.2d 84 (1972). "[A]rbitration and its scope remain dependent on the contract. The courts are empowered to direct compliance with the provisions of arbitration agreements, but no one may be compelled to arbitrate a dispute outside the scope of the agreement. . . ." Id., 122.
The insurance contract has been submitted to the court as an exhibit. The contract originally submitted provided, in pertinent part, "[i]f [Amica] and an insured do not agree . . .whether that person is legally entitled to recover damages under this part; or . . .as to the amount of damages . . .either party may make a written demand for arbitration."[3]
The policy in effect at the time of injury was amended,[4] however, to provide that "[i]f [Amica] and an insured do not agree . . .whether that person is legally entitled to recover damages under Part C; or . . . as to the amount of damages . . .then the matter may be arbitrated. However,both parties must agree to arbitration." (Emphasis added.).[5]
"Arbitration is a creature of contract. It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law. But a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. No one can be forced to arbitrate a contract dispute who has not previously agreed to do so. The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention." (Citations omitted; internal quotation marks omitted.) A. Dubreuil Sons, Inc. v. Lisbon,215 Conn. 604, 608, 577 A.2d 709 (1990). "[T]he language of the contract controls and determines whether the arbitrability of a dispute is for the court or the arbitrators." (Citation omitted; internal quotation marks omitted.) Combustion Engineering, Inc. v. International Brotherhood ofBoilermakers, 15 Conn. App. 332, 334, 544 A.2d 256 (1988). "[Ordinarily] CT Page 4365 the intention of the parties is, in turn, a question of fact." A.Dubreuil Sons, Inc. v. Lisbon, supra, 215 Conn. 609. "[This] limitation . . . does not apply, however, where the contract language is definitive, that is, where [a] trial court could . . .reasonably reach . . . but one conclusion." Painewebber, Inc. v. American ArbitrationAssn., 217 Conn. 182, 190, 585 A.2d 654 (1991).
The language of the insuring contract in this matter is clear. The only conclusion that could be reached, in determining the intention of the parties, is that arbitration is only required if both parties agree. This is particularly apparent in that the language, requiring agreement by both parties prior to arbitration, was added as an amendment to the policy in place of language authorizing arbitration when requested by either party. Whereas the plaintiff questions whether the defendant adequately expressed in its answer its intention not to arbitrate, it is clear to the court that the defendant does not agree to arbitrate.
There is no genuine issue that both parties do not agree to arbitrate this matter, as required under the insuring contract. The court does not have the power, under our common law or statutes,[6] to order that the defendant submit this matter to arbitration, as the plaintiff requests in count two of the complaint. The defendant's motion for summary judgment, as to the second count, is, therefore, granted.[7]
 II
Amica also moves for summary judgment on the first count. The defendant claims that the plaintiff is not eligible to recover under the uninsured motorist provisions of his mother's policy because of an exclusion in the policy. The exclusions section of the uninsured motorist coverage portion of the policy provides, in part, "[Amica] do[es] not provide Uninsured Motorist Coverage for bodily injury sustained by any person . . .using a vehicle without a reasonable belief that that person is entitled to do so."[8] The defendant's position is that, under the facts in this case, Jason Nicholas could not have had a reasonable belief that he was entitled to use the motorcycle. He is, therefore, excluded from coverage under the policy.
The plaintiff claims that the policy provision is ambiguous because it is unclear if the "any person" who "would be excluded from coverage applies to family members. "The plaintiff also claims that the policy is ambiguous because it is unclear if the "reasonable belief that he was entitled to drive" means permission to drive or a legal entitlement to drive.
"An insurance policy is to be interpreted by the same general rules CT Page 4366 that govern the construction of any written contract . . ." Kitmiridesv. Middlesex Mutual Assurance Co., 65 Conn. App. 729, 731, 783 A.2d 1079, cert. granted, 258 Conn. 939, 786 A.2d 425 (2001). "It is the function of the court to construe the provisions of the contract of insurance. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty Surety Co.,247 Conn. 801, 805-06, 724 A.2d 1117 (1999); see Israel v. State FarmMutual Automobile Ins. Co., 259 Conn. 503, ___ A.2d ___ (2002). "[C]onstruction of a contract of insurance presents a question of law for the court." (Citation omitted.) Kitmirides v. Middlesex Mutual AssuranceCo., supra, 65 Conn. App. 732.
 A
The court will initially examine the insurance policy to determine if the policy is ambiguous as to whether the "any person," which is excluded from coverage under the provision, applies to family members. The declaration page of the policy lists the plaintiff, Karen Nicholas, as the only named insured. The definition of an insured, however, for the purposes of who is entitled to recover under the various provisions of the policy, is the named insured, Karen Nicholas, or any family member of the insured.[9] The uninsured motorists coverage portion of the policy specifically states, in part, that compensatory damages will be paid to an insured or any family member.[10] Jason Nicholas, therefore, as a blood relative living in the household of Karen Nicholas, would be covered under the uninsured motorist portion of the policy, if not for the application of the exclusionary language.[11] The applicable exclusion, however, bars recovery by "any person . . . using a vehicle without a reasonable belief that that person is entitled to do so." Although the phrase "any person," used in many portions of the policy, is not defined, the natural and ordinary meaning of the words are that they apply to CT Page 4367 anyone on earth, including family members of the insured. There is nothing in the wording of the policy that makes it ambiguous whether the exclusion, which applies to "any person," also applies to family members.
The court specifically notes a policy amendment which is limited to the liability portion of the policy. Originally, any person, using a vehicle without a reasonable belief that he was entitled to do so, was also excluded from liability coverage, as well as medical payments and uninsured motorist coverage.[12] As to liability coverage only, the policy was amended to provide that "[t]his exclusion does not apply to a family member using your covered auto which is owned by you."[13] By removing family members from the exclusion as to liability coverage only, and by not removing family members from the exclusion as to uninsured motorist coverage, it is clear that the exclusion language "any person," is intended to apply to family members in the context of an uninsured motorist claim. The language, rather than being ambiguous, is clear.
"[W]here the language of. the contract is clear and unambiguous, the contract is to be given effect according to its terms." Kitmirides v.Middlesex Mutual Assurance Co., supra, 65 Conn. App. 733. "The ultimate question of intent in this case involves a determination of what coverage the insured expected to receive and what coverage the insurer expected to provide as disclosed by the language of the policy. If the words are plain and unambiguous, they must be given their ordinary and natural meaning, and [the court will] not force, ignore or distort provisions so as to give them a different meaning from how they were evidently intended by the parties. . . . [The court] will not torture language to find an ambiguity that the ordinary meaning does not disclose however, and simply because the parties contend for different meanings does not necessitate a conclusion that the language is ambiguous." (Citations omitted.) AetnaLife Casualty Co. v. Bulaong, 218 Conn. 51, 60, 588 A.2d 138 (1991).
The court has read and considered cases from other jurisdictions wherein similar language in insurance policies was found to be ambiguous.[14] The court finds more persuasive, however, the decisions from other jurisdictions which have concluded that the disputed language is plain and unambiguous.[15] Although no Connecticut decision can be found which addresses the issue of whether excluding "any person" in the disputed language applies to family members, numerous decisions are found which note, without discussion, the application of the exclusion to a family member.[16] As the court finds that the disputed policy language is clear and unambiguous, there is no genuine issue that the exclusion applies to Jason Nicholas, a family member of Karen Nicholas. CT Page 4368
 B
The plaintiff also claims that the policy is ambiguous because it is unclear if the "reasonable belief that he was entitled to drive" means permission to drive or a legal entitlement to drive. If the court finds that the clause is ambiguous, the provision must be construed in favor of the plaintiff because the defendant, insurer, drafted the policy. SeeIsrael v. State Farm Mutual Automobile Ins. Co., supra, 259 Conn. 508-09. If the court finds that the clause is clear but means that permission by the owner of the vehicle is sufficient, then summary judgment would be denied as there is no genuine issue that Jason Nicholas drove the motorcycle with the express or tacit permission of the vehicle's owner, John Koch. Lastly, if the court finds that the clause is clear but means that more than permission is needed, similar to legal entitlement, an analysis of the facts must be done to determine if there is a genuine issue whether the exclusion bars recovery by the plaintiff under the facts of this case.
As with the meaning of the "any person" clause, there is a split of authority in other jurisdictions as to whether the phrase "reasonable belief that he was entitled to drive" is ambiguous. Most of the cases interpret the provision in the liability context of the policy, rather than the uninsured motorist context. The analysis of the phrase, however, applies in both contexts. Some courts find the disputed language to be ambiguous, noting that there is no explanation in the policy as to whether permission or legal entitlement is required.[17] The court finds more persuasive, however, the cases from other jurisdictions which find the clause to be clear and unambiguous and the analysis of the clause in those cases to the facts presented.[18]
The disputed language is not mentioned in any Connecticut statute or regulation.[19] Numerous Connecticut decisions mention, without discussion, that the driver of a vehicle was using the vehicle without a reasonable belief that he was entitled to do so.[20] No appellate decision in Connecticut, however, has yet construed the provision. InAetna Life Casualty Co. v. Bulaong, supra, 218 Conn. 51, both parties appealed an arbitration panel's decision which awarded uninsured motorist benefits to a claimant. The injured party was a passenger on a stolen motorcycle. The insurance company defended, citing the exclusion and claiming that the defendant was using a motor vehicle without a reasonable belief that he was entitled to do so. The majority of the arbitrators awarded uninsured motorist benefits, finding that being a passenger in a vehicle was not "using" the vehicle under the exclusion. The trial court confirmed the arbitration award. The Connecticut Supreme Court reversed, holding that a passenger would indeed be using a vehicle under the exclusion. The court noted that because the majority CT Page 4369 arbitrators and the trial court found that the plaintiff, as a passenger, was not using the vehicle, the issue of whether he had a reasonable belief that he was entitled to do so was not decided. Id., 56-57. The decision, therefore, gives a detailed analysis of the term "using" a vehicle but is silent on the "reasonable belief that he was entitled" aspect of the exclusion.
In Worcester Insurance Co. v. Bacon, Superior Court, judicial district of Tolland at Rockville, Docket No. 059047 (February 21, 1997, Hammer,J.T.R.) (19 Conn.L.Rptr. 54) the court was presented with the exact issue present in this case.[21] In that case, a son was driving a leased vehicle which his father had rented. The son, who had been drinking in the car with his friends, drove the car to a dark, isolated cul-de-sac to continue to drink. The son, who was very intoxicated, left the car. The friends who remained in the car did not realize that the son had passed out and was lying on the roadway directly behind the vehicle. In an attempt to find the son, the defendant, one of the friends left in the vehicle, backed the car a few feet, intending to only move the car enough to shine the headlights into the woods so that they could see where their friend was. While moving the vehicle, he ran over the son. The son sued the defendant in a related action.
The plaintiff, insurer, brought a declaratory judgment action asking the court to decide that it had no duty to defend the defendant in the action brought by the son, or to provide coverage for the defendant. The insurer felt that the defendant was excluded from coverage because he was using the vehicle without a reasonable belief that he was entitled to do so. The insurer moved for summary judgment.
The court held that "[t]he words "using a vehicle without a reasonable belief that the person is entitled to do so' have a plain and unambiguous meaning, namely, that, in order for there to be coverage, the trier of fact must find that the person using the vehicle believed that he was entitled to do so and that such belief was reasonable." (Citation omitted.) Id. This court agrees with the court in Worcester InsuranceCo. v. Bacon, supra, Superior Court, Docket No. 059047 and the decisions from the other jurisdictions which hold the disputed language to be clear and unambiguous.[22] As the court finds that the language is unambiguous, it must apply the common meaning of the terms to the facts in this case.
"From the language of the clause it is clear that coverage is excluded if the driver
(a) knew that he was not entitled to drive the vehicle, or CT Page 4370
(b) if he claimed he believed he was entitled to drive the vehicle, but was without reasonable grounds for such belief or claim." Allstate Ins.Co. v. United States Fidelity And Guaranty Co., (Citation omitted.)663 F. Sup. 548, 553, aff'd, 846 F.2d 1147 (W.D. Arkansas 1987); see also General Accident Fire Life Assurance Corp., Ltd. v. Perry,75 Md. App. 503, 541 A.2d 1340, 1349 (1988). The use of the term "reasonable belief," therefore, requires the court to examine both whether the defendant subjectively believed that he was entitled to drive the vehicle or whether he knew that he was not entitled to drive. If the defendant claimed that he thought he was entitled to drive the vehicle, the court would use an objective standard to determine if that belief was reasonable. See Worcester Insurance Co. v. Bacon, supra, Superior Court, Docket No. 059047. As to the determination of whether any belief that the defendant may have had, that he was entitled to drive the vehicle, was reasonable, one court has "focused on several factors: 1) whether the driver had express permission to use the vehicle; 2) whether the driver's use of the vehicle exceeded the permission granted; 3) whether the driver was `legally' entitled to drive under the laws of the applicable state; 4) whether the driver had any ownership or possessory right to the vehicle; and 5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe he was entitled to drive the vehicle." General Accident Fire Life Assurance Corp., Ltd.v. Perry, supra, 541 A.2d 1340, 1350 (1988). While not totally adopting these factors, the court uses them as guidance.
In this case, 15 year old Jason Nicholas knew that he did not have the permission of his mother, the only insured, to drive the motorcycle. In fact, his mother had forbade him on numerous occasions not to drive the motorcycle. Any permission given by the owner of the motorcycle, his unrelated acquaintance, John Koch, may be relevant if this case involved an allegation of theft of the motorcycle. When considering whether Jason Nicholas believed that he was entitled to drive, and whether that belief was reasonable, the permission given by John Koch was legally invalid[23]
and adds little support to the plaintiff.[24]
Jason Nicholas also admitted that he knew that he could not lawfully drive a motorcycle which was unregistered, uninsured and on which he had placed a stolen marker plate. He also knew that, at fifteen years of age, he could not lawfully drive and that it was unlawful to drive while under the influence of alcohol.[25] None of these facts were disputed by the plaintiff. It is a stretch of logic for the court to accept that, merely because Jason Nicholas had the permission of John Koch, he subjectively believed that he was entitled to drive the motorcycle. If he did have such a belief, however, the belief was not reasonable. CT Page 4371
The court has decided this case based on the clear and unambiguous language of the policy and an application of the language to the facts presented. The court does note, however, the public policy against awarding recovery to a participant in unlawful activity, particularly where the unlawful activity is a major factor in causing the injury which is the basis for the claim. See Harvey v. Travelers Indemnity Co.,188 Conn. 245, 250, 449 A.2d 157 (1982); Gaudet v. Safeco Ins. Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 025963 (July 16, 1990, Meadow, J.), rev'd on other grounds,219 Conn. 391, 593 A.2d 1362 (1991). "[T]he established purpose of the uninsured motorist law [is] to provide protection to innocent victims of financially irresponsible drivers. Fidelity And Casualty Co. v. Darrow,161 Conn. 169, 176, 286 A.2d 288 (1971). Awarding recovery in this case to Jason Nicholas, far from an innocent victim, would be contrary to the stated purpose of the law.
There is no genuine issue as to the material facts. Under the plain and unambiguous language of the insurance policy, Jason Nicholas is excluded from uninsured motorist coverage as he was operating the motorcycle without a reasonable belief that he was entitled to do so.[26] The defendant's motion for summary judgment, as to the first count, is also granted.
MORAN, J.