THE TRAVELERS INSURANCE COMPANY *v.* MICHAEL KULLA, ADMINISTRATOR (ESTATE OF ROBERT KULLA) (13885)

SHEA, CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued June 7—decision released August 21, 1990

*William F. Gallagher,* with whom were *Cynthia C. Bott* and, on the brief, *Wilson J. Trombley* and *Dan Shaban,* for the appellant (defendant).

*Scott B. Clendaniel,* with whom were *John D. Palermo* and, on the brief, *Geoffrey Naab,* for the appellee (plaintiff).

BORDEN, J. The dispositive issue in this appeal is whether an insurance policy provision limiting underinsured motorist coverage to liability for damages arising "out of the ownership, maintenance or use of the uninsured motor vehicle," and the regulation on which that provision is based, are contrary to the uninsured and underinsured motorist coverage statute, General Statutes § 38-175c.[1] The plaintiff, The Travelers Insurance Company, denied underinsured motorist coverage to the defendant, the administrator of the estate

[1] General Statutes § 38-175c provides: "UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted

of Robert Kulla. The parties submitted the issues of coverage and damages to a panel of arbitrators, which awarded the defendant $200,000 of underinsured motorist coverage. Upon an application to vacate filed by the plaintiff and an application to confirm filed by the defendant, the trial court vacated the award and denied the application to confirm. From that judgment the defendant appealed to the Appellate Court and, pursuant to Practice Book § 4023, we transferred the appeal to this court. We hold that the policy provision and regulation in question are valid, and we affirm the judgment of the trial court.

The following facts are undisputed. On December 17, 1986, Robert Kulla was killed in an automobile driven

by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

by Constance Lawlor, who, while intoxicated, lost control of the vehicle, driving it off the side of the road in the town of Prospect. The defendant was appointed administrator of his estate.

The automobile involved in the accident was one of four vehicles owned by Muhamer Kulla, Robert Kulla's father, an insured under the same policy issued by the plaintiff. The vehicle involved had been furnished and made available by Muhamer to Robert for his regular use. The policy provided liability and uninsured motorist coverage in the amount of $100,000 for each of Muhamer's automobiles. At the time of the accident, Robert was an "insured" under the policy because he was a relative of the named insured, Muhamer, and resided in Muhamer's household. Lawlor owned an automobile that was insured by the Maryland Casualty Insurance Company with liability coverage in the amount of $100,000. Each insurance company paid $100,000 of liability insurance to the defendant. The arbitrators apparently arrived at their award of $200,000 by stacking the $100,000 of uninsured motorist coverage relating to the four Kulla vehicles and deducting the $200,000 of liability insurance that the defendant had received under the liability coverages available under Lawlor's vehicle and the policy issued by the plaintiff.

The defendant challenges the trial court's judgment on four grounds,[2] but at oral argument in this court, he made clear that all four claims hinge on the validity

[2] The four claims are: (1) the court improperly interpreted the plaintiff's policy by failing to compare the tortfeasor's liability coverage against the amount of Muhamer's underinsured motorist coverage; (2) even if the statutory exclusion of General Statutes § 38-175c (a) (1) (A), on which the court relied in part, was applicable, it was unenforceable; (3) the provision in the plaintiff's policy limiting underinsured motorist coverage to damages arising out of the ownership, maintenance or use of the uninsured motor vehicle, and the state regulation on which that provision is based, are unenforcea-

of his third claim. That claim is that the policy provision limiting underinsured motorist coverage[3] to damages arising out of "the ownership, maintenance or use of the uninsured motor vehicle," is unenforceable because it is contrary to the provisions of General Statutes § 38-175c, as interpreted by this court. Because we disagree with this claim, we need not fully address the defendant's other claims.

The defendant argues that the Lawlor vehicle, not the Kulla vehicle, is the underinsured vehicle in this case, because, as we have interpreted § 38-175c (b) (2) in *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 195–96, 530 A.2d 171 (1987), "underinsured motorist coverage is triggered when the tortfeasor's *automobile* liability coverage is exhausted." (Emphasis in original.) The defendant's argument focuses not on the language of § 38-175c (b) (2) defining an "underinsured motor vehicle," but on our case law interpreting the trigger for underinsured motorist coverage. Thus, he argues, the trial court failed to consider the exhaustion of Lawlor's liability coverage as the triggering event for such coverage under the plaintiff's policy.

Contrary to the defendant's suggestion, neither *DelGreco* nor any of our other cases involving underinsured coverage have dispensed with the necessity for determining that the definition of "underinsured motor vehicle" in § 38-175c (b) (2) must first be satisfied in order for a claimant seeking such coverage to prevail. Indeed, in *Farm & City Ins. Co.* v. *Stevens,* 215 Conn.

ble because they exceed the requirements of § 38-175c (a) (1); and (4) the court improperly interpreted the policy in a way contrary to the reasonable expectations of the insured.

[3] The policy defines an "uninsured motor vehicle" to include a motor vehicle "to which a bodily injury liability insurance policy or bond applies at the time of the accident, but with limits of liability less than the applicable uninsured motorist limits of liability provided under this policy."

157, 162, 574 A.2d 1300 (1990), we recently rejected a stacking claim because, under the facts of that case, the claimant's position would produce "an untenable result . . . not within the contemplation of § 38-175c (b) (2)." We turn, therefore, to the question of whether the Lawlor vehicle was an "underinsured motor vehicle" within the terms of § 38-175c (b) (2).

We recognize that it is possible to consider the Lawlor car as an "underinsured motor vehicle" by applying the terms of § 38-175c (b) (2) literally. Because the liability policy covering Lawlor's car, as well as the Kulla car, applied to this accident, the Lawlor car could be viewed as "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection." General Statutes § 38-175c (b) (2). From that premise, the conclusion would follow that the first sentence of § 38-175c (a) (1) would apply to the plaintiff's policy: "Every such policy shall provide insurance, herein called uninsured motorist coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages *from owners or operators of uninsured motor vehicles and underinsured motor vehicles* . . . because of bodily injury, including death resulting therefrom . . . ." (Emphasis added.) Under this reading, since the defendant was legally entitled to recover damages from Lawlor, the owner of an underinsured motor vehicle, the statute would mandate coverage under the plaintiff's policy.

Under this theory, however, the defendant's claim would founder on the second sentence of the policy provision regarding underinsured motorist coverage, and

the corresponding regulation, because the decedent's damages did not arise out of the operation of the Lawlor vehicle. The uninsured motorist insurance coverage provision of the plaintiff's policy provides in pertinent part: "*We* will pay damages that the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury suffered by the *insured* and caused by an accident." (Emphasis in original.)[4] At issue is the second sentence of this provision: "Liability for such damages must arise out of the ownership, maintenance or use of the *uninsured motor vehicle.*" (Emphasis in original.) The defendant does not dispute that this policy provision is authorized by a regulation of the insurance commissioner regarding uninsured and underinsured motorist coverage. That regulation provides in pertinent part: "The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured *caused by an accident involving the uninsured motor vehicle.*" (Emphasis added.) Regs., Conn. State Agencies § 38-175a-6 (a).

The defendant, recognizing the limiting language of the regulation, therefore argues that, because the public policy of the uninsured motorist statute; General Statutes § 38-175c; is " 'person-oriented' " rather than " 'vehicle-oriented' "; *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 248, 449 A.2d 157 (1982); and because the policy provision and the regulation tie coverage to the vehicle rather than permit it to follow the insured, both the policy provision and the regulation upon which it is based are contrary to the statute

---

[4] The emphases indicate that those words are specifically defined in the policy.

and unenforceable.[5] We disagree. We conclude that the regulation, and thus the policy provision upon which it is based, are valid, and that the "person-oriented" purpose of § 38-175c does not reach as far as the facts of this case.

Although the defendant's reading of § 38-175c (b) (2) has a superficial linguistic appeal, we reject it because it would be contrary to a fundamental purpose of underinsured motorist legislation. " 'The words of a statute should be interpreted in their natural and usual meaning unless such reading would defeat a legislative intent which becomes evident when the statute is read in the light of its history and purpose . . . even though such construction may seem contrary to the letter of the statute.' " *State* v. *Delafose,* 185 Conn. 517, 522, 441 A.2d 158 (1981), quoting *Royce* v. *Heneage,* 170 Conn. 387, 392, 365 A.2d 1109 (1976). Further, statutes must be read with common sense. *White* v. *Burns,* 213 Conn. 307, 321, 567 A.2d 1195 (1990).

Certain facts bear repeating. This was a one-car accident. The sole car involved in the accident—the Kulla car—was owned by Muhamer, who furnished it to Robert for his regular use. The Lawlor vehicle was not involved in the accident. The only connection that it had with the accident was that it happened to be owned by the operator of the Kulla vehicle.

This factual situation is simply not the type of situation that underinsured motorist legislation is designed to cover. Had Lawlor not owned a car, and therefore been without automobile insurance of any kind, the defendant would be unable to claim that a nonexistent

---

[5] Although the defendant claimed at oral argument that he raised the invalidity of the policy provision at the trial, the record does not bear that out. We nonetheless exercise our appellate discretion in order to consider the issue, because it has been fully briefed here and is important to our underinsured motorist coverage legislative scheme.

Lawlor car was somehow an "underinsured motor vehicle" within the meaning of the statute. The fact that Lawlor did own a car—but one that had no connection to the accident causing the defendant's loss—cannot convert that car into an "underinsured motor vehicle." Designating the Lawlor car as the underinsured motor vehicle in this factual situation "will no more change its essential character than calling a bull a cow will change its gender." *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982).[6] Moreover, the defendant has not referred us to any case, and we have found none, where a vehicle totally unrelated to the accident involved was considered to meet the definition of an "underinsured motor vehicle" under § 38-175c (b) (2).

Implicit in the statutory scheme of § 38-175c and in the definition of an "underinsured motor vehicle" in § 38-175c (b) (2), is the commonsensical requirement that the underinsured vehicle be causally connected to the loss for which the claimant seeks compensation. "The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury *caused by an accident with an inadequately insured automobile.*" (Emphasis added.) *Myers* v. *State Farm Mutual Automobile Ins. Co.,* 336 N.W.2d 288, 291 (Minn. 1983); see also *Sullivan* v. *State Farm Mutual Automobile Ins.,* 513 So. 2d 992 (Ala. 1987); *Preferred Risk Mutual Ins. Co.* v. *Tank,* 146 Ariz. 33, 36, 703 P.2d 580 (1985); *Meyer* v. *Illinois Farmers Ins. Group,* 371 N.W.2d 535 (Minn. 1985); *Linder* v. *State Farm Mutual Automobile Ins. Co.,* 364 N.W.2d 481 (Minn. App. 1985); *Millers Casualty Ins. Co. of Texas* v. *Briggs,* 100 Wash. 2d 1, 665 P.2d 891 (1983).

---

[6] Indeed, nowhere in the defendant's brief does he specifically argue that the Lawlor vehicle is the underinsured motor vehicle. It was not until oral argument that he clarified his position, and even then referred to the designation of the Lawlor vehicle as the underinsured vehicle as an apparent "nonsequitur."

Applying this principle to the facts of this case, we conclude that the regulation and policy provision challenged by the defendant are valid. They reflect the basic premise inherent in the statutory scheme of uninsured motorist coverage that the uninsured or underinsured vehicle must be causally connected to the occurrence that results in the claimant's loss. To conclude otherwise would defy common sense and would tear from its roots the concept of an "underinsured motor vehicle" as a condition of recovery under § 38-175c.

This conclusion is buttressed by the recognition that an administrative agency's regulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute. *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 128, 527 A.2d 672 (1987). A person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981). The insurance commissioner has a "very broad grant of regulatory authority" in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in doing so his regulation is entitled to "great deference." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976). "In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt regulation § 38-175a-6 [a]." Id.

Nor is this conclusion inconsistent with our previous cases where we stated that § 38-175c is "person oriented" rather than "vehicle oriented." We first, and most forcefully, articulated that concept in *Harvey* v. *Travelers Indemnity Co.,* supra, and have reasserted it in *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 486,

518 A.2d 373 (1986), and *Smith* v. *Nationwide Mutual Ins. Co.,* 214 Conn. 734, 738–39, 573 A.2d 740 (1990). Those cases are distinguishable.

In *Harvey,* on which the defendant relies, the plaintiff was operating an uninsured vehicle, owned by his father, that collided with another uninsured vehicle owned by a third party. The plaintiff sought coverage under a policy issued to his mother for a third vehicle. At issue was the validity of a policy provision excluding coverage to an insured who was occupying a vehicle, other than the insured vehicle, owned by the named insured or his relative. *Harvey* v. *Travelers Indemnity Co.,* supra, 246. We held that the policy exclusion was invalid because it was against the public policy of § 38-175c "that uninsured motorist coverage be provided to insureds when they are not occupants of insured vehicles as well as when they are." Id., 248. We also stated that uninsured motorist coverage "attaches to the insured person, not the insured vehicle." Id.[7] In *Allstate Ins. Co.,* the claimant's decedent was a passenger in an inadequately insured vehicle, owned by Frank DeSouza, that was involved in a collision with another inadequately insured vehicle. We held that the claimant was permitted to aggregate, or "stack," the underinsured coverage applicable to the vehicle in which the decedent was a passenger and a second vehicle also owned by DeSouza. In *Smith,* the claimant was a passenger in an inadequately insured

---

[7] We note, however, that in 1983, the legislature amended General Statutes § 38-175c to limit to some extent the broad sweep of *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 248, 449 A.2d 157 (1982). Public Acts 1983, No. 83-461, codified in part as § 38-175c (a) (1) (A) and (B), provides: "No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured."

automobile, owned by Eric S. Harrington, that was involved in a one-car accident. The claimant sought to recover underinsured motorist benefits from a policy covering two other vehicles owned by Robert Harrington, the father of Eric S. Harrington. We held that the claimant could not recover because he was not "covered" by that policy, and that the coverage provision of the policy was valid. *Smith* v. *Nationwide Mutual Ins. Co.*, supra, 740–41. In none of these cases was recovery for uninsured or underinsured motorist coverage permitted on the basis of a one-car accident where, as in this case, the purported underinsured vehicle was not involved in the accident in any way.

We briefly address the defendant's final claim,[8] namely, that because the policy did not define "underinsured motor vehicle," the policy was ambiguous and must be construed against the insurer. He contends that an insured under a policy containing such ambiguous underinsured motorist coverage would reasonably expect to receive coverage when injured by the fault "of an uninsured driver," namely, Lawlor, and that to deny him coverage would be contrary to his reasonable expectations. We disagree.

First, the policy did define an underinsured motor vehicle, although it did not use that specific term. See

---

[8] The defendant also argues that, assuming the Kulla vehicle, rather than the Lawlor vehicle, is deemed to be the underinsured vehicle, he is entitled to recover despite the resident relative exclusion of General Statutes § 38-175c (a) (1) (A). That provision excludes from underinsured motorist coverage "a named insured or relatives residing in his household when occupying . . . an . . . underinsured motor vehicle . . . that is owned by the named insured." Recognizing that this language clearly excludes Kulla, the defendant posits the novel argument that the statutory language itself is "contrary to the intent of the legislature, and therefore, unenforceable." This is a proposition for which the defendant cites no authority other than assertion. *State* v. *Mancinone* 15 Conn. App. 251, 286, 545 A.2d 1131 (1988), cert. denied, 489 U.S. 1017, 109 S. Ct. 1132, 103 L. Ed. 2d 194 (1989). We dispose of this extraordinary argument by noting the absence of any authority for such a process of judicial nullification of a statute.

footnote 3, supra. Second, the critical part of the policy was not that definition but the provision limiting underinsured motorist coverage to situations actually involving such a vehicle. That provision is quite clear and is authorized by the regulation, which is consistent with the statute. Moreover, we would look not to the expectations of the defendant's decedent, but to the expectations of the purchaser of the policy, in this case, Muhamer. See *Allstate Ins. Co.* v. *Ferrante,* supra, 487. Any broader expectations he may have had would have been contrary to the regulation and the statute it implements.

The judgment of the trial court is affirmed.

In this opinion the other justices concurred.