[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT AETNA CASUALTY SURETY COMPANY'S MOTION FOR SUMMARY JUDGMENT
The pleadings raise two issues dispositive to this motion. They are (1) whether the Masucci vehicle was an uninsured motor vehicle under the Aetna policy; and (2) whether the injured plaintiff, Christopher Samele, is a covered person under the Standard Fire policy? Both issues are answered in the negative.
The following facts are undisputed. On December 23, 1988 a motor vehicle owned by the defendant Donald Masucci, and operated by his daughter, Elizabeth Masucci, left the travel portion of the highway and struck a guardrail. Christopher Samele, a passenger in the Masucci vehicle, was ejected from the back of the car, severing his left leg, and causing severe injuries. At all times, Elizabeth Masucci was operating the vehicle as a family vehicle with the permission, knowledge and consent of her father. At the time of the accident, the Masucci vehicle, a 1982 Volkswagen Quantum, was covered under an insurance policy issued by the Aetna Casualty Surety Co. ("Aetna") automobile insurance policy #242 54 293 48829 PZA ("the Aetna policy"), with liability coverage of $100,000 per person, $300,000 per accident limit.
Samele and two other injured passengers each received $100,000 in connection with their injuries, thereby exhausting the liability coverage applicable to this accident. At the time of the accident, three other vehicles owned by the Masucci family were covered under a separate Aetna policy issued by the Standard Fire Insurance Co., policy #242 SZ 293 68809 PBS ("Standard Fire") providing for uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident for each vehicle.
In paragraph 3 of the Second Count, the plaintiff alleges that "at the time . . . (of the accident) Donald A. Masucci was underinsured for liability coverage for Christopher Samele's injuries and damages, and as such, the plaintiff is entitled to coverage under the underinsured motorist provision of the Masucci's policies."
In the pending action, Samele claims coverage under the underinsured motorist provisions of the Aetna policy and the separately issued Standard Fire policy applicable to the three remaining Masucci vehicles. CT Page 7931
The parties are in accord that there are no genuine issues of material facts in dispute, and that the pleadings are closed.
Practice Book 384 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Connecticut National Bank v. Great Neck Development Co., 215 Conn. 143, 148 574 A.2d 1298 (1990). Because the party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact, the facts presented must be viewed in the light most favorable to the party opposing the motion. State v. Goggin, 208 Conn. 606,615, 546 A.2d 250 (1988). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." Connecticut National Bank v. Great Neck Development Co., supra.
The instant action is predicated on General Statutes 38-175c. it reads in relevant part: "Every policy shall provide insurance, herein called uninsured motorist coverage. . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. The plaintiff cannot prevail unless it is established that he was injured by the owner or operator of an uninsured or underinsured motor vehicle.
The Aetna policy expressly and unequivocally excluded from its definition of "uninsured motor vehicle" the vehicle operated by Elizabeth Masucci. Accordingly, the plaintiff Samele was not injured by the owner or operator of an uninsured motor vehicle as defined in the Aetna policy. The plaintiff does not seriously argue that this exclusion is against public policy or in violation of a General Statute or insurance regulation. Rather, he contends that despite the contractual language, the Masucci vehicle was an underinsured motor vehicle as defined by General Statutes 38-336 (d). The plaintiff further contends that the three remaining Masucci vehicles can be stacked in his favor.
Regulations are in force expressly allowing an insurer to render its uninsured coverage inapplicable to any vehicle owned by the named insured. Conn. Agencies Regs. Section 38-175a-6 (1986). Policy language similar to that included in the Aetna policy, excluding from its definition of uninsured motor vehicles, cars owned or operated by a named insured has been approved and sustained, although challenged, in our state courts. Travelers Insurance Co. v. Kulla, Superior Court, J.D. CT Page 7932 of Hartford/New Britain (August 4, 1989) #358117, aff'd.216 Conn. 390 (1990). The facts in Kulla are closely replicated to the case at bar. The policy definition of uninsured motor vehicle in Kulla is nearly identical to the definition in the instant Aetna policy. The term uninsured motor vehicle was deemed not to include a vehicle owned by or furnished or available for the regular use of the named insured or any family member. Kulla, id.
 "Recognizing that this language clearly excludes [the deceased passenger] the [administrator] posits the novel argument that the statutory language itself is `contrary to the intent of the legislature and therefore unenforceable.' This is a proposition for which the [administrator] cites no authority other than assertion . . . ."
Travelers Insurance Co. v. Kulla, 216 Conn. 390, fn. 8, p. 401, (1990).
C.f. Government Employees Ins. Co. v. Donato, Superior Court, J.D. New Haven (1990), #302930 where the court (Fracasse, J.) held that uninsured motorist coverage is not available from the driver's policy to an injured passenger who has previously collected liability coverage under the same policy. In Donato, the policy language excluded the insured auto from being either an uninsured or underinsured motor vehicle.
"Interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." Aetna Life Casualty Co. v. Bulaong,218 Conn. 51, 58, 588 A.2d 138 (1991). "Construction of a contract of insurance presents a question of law for the court . . . ." Id.
General Statutes 38a-336 (d) provides:
 [A]n "underinsured motor vehicle" means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subsection (b) of this section.
"The statute is unequivocal . . . in establishing the mechanism for determining whether a vehicle is underinsured, and it specifically limits consideration of underinsured motorist CT Page 7933 coverage to each policy separately." Covenant Ins. Co. v. Coon,220 Conn. 30, 37 594 A.2d 977 (1991).
The Aetna policy provided liability coverage in the amount of $100,000 per person and $300,000 per accident. That policy also provided uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. The Standard Fire policy provides uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident.
By virtue of 38-336 (d), id., and the unequivocal exclusionary language of the Aetna policy, there is no uninsured motorist coverage available to the plaintiff Samele. This court concludes that the Masucci vehicle is not underinsured pursuant to the definitions under 38a-336 (d). See Kulla, supra.
The second issue is raised by plaintiff's claim to uninsured motorist coverage under the Standard Fire policy covering the remaining three Masucci vehicles. In effect, the plaintiff seeks to stack the uninsured motorist benefits under the Aetna and Standard Fire policies.
The Standard Fire policy provides payment "which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle." Covered person is defined as (1) You (named insured) or any family member and (2) any other person occupying your (named insured's) covered vehicle. The named insured's covered vehicle is defined as any vehicle shown in the declarations of the policy. The Masucci vehicle in which the plaintiff was a passenger is not a vehicle described on the declaration sheet of the Standard Fire policy. The Standard Fire policy enumerated three vehicles, none of which was involved in the December 23, 1988 accident. It is undisputed that the Masucci vehicle, involved in the accident, was not covered under the Standard Fire policy.
The plaintiff's memorandum falls short in addressing this issue of coverage. The plaintiff relies on his assertion that the intra-policy stacking affords him coverage under the Standard Fire policy. The plaintiff's contention that an insurer who agrees with an insured to insure certain listed vehicles, owned by that insured, accordingly agrees to insure every other vehicle owned by that insured is misplaced and is unsupported by authority.
In Smith v. Nationwide Mutual Ins. Co., 214 Conn. 734
(1990) a similar challenge was raised on identical policy language. The court ruled that an injured passenger was not entitled to uninsured motorist benefits under a separate policy issued to the host-driver's father. In interpreting the CT Page 7934 policy's definition of "covered person" the court declared: "There is no dispute that the `you' in the first definition refers to Robert Harrington, (the vehicle owner and named insured). Furthermore, Smith, (the injured plaintiff passenger), obviously is not a Harrington family member and therefore is not a `covered' person under the first definition. Similarly, when Smith was injured, she was not occupying a covered auto, i.e., one of the two automobiles described in the policy, and therefore does not fall within the second definition." Id., 740.
The 1982 Volkswagen is listed only in the Aetna policy; it is not included amongst the three other Masucci owned vehicles.
It is undisputed that the plaintiff Samele was not a passenger in a "covered auto" under the Standard Fire policy. Accordingly, Samele does not qualify as a "covered person" under the Standard Fire police and, therefore, he is not entitled to uninsured motor benefits under the Standard policy.
Samele is not eligible for underinsured motorist benefits under the Aetna policy because the Masucci vehicle, involved in the subject accident, is not an underinsured motor vehicle as defined by General Statutes 38-336 (d), supra. Nor is Samele eligible for uninsured motorist benefits under the Standard Fire policy because he is not a "covered person" under that policy.
Accordingly, the defendant's motion for summary judgment is hereby granted.
SO ORDERED, Arthur L. Spada, J.