******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully dissent from the majority opinion, which affirms the judgment of the trial court dismissing the claims brought by the plaintiff, Connecticut Energy Marketers Association, against the defendants, the Department of Energy and Environmental Protection (department) and the Public Utilities Regulatory Authority (authority). First, respectfully, in my view, this is not an issue of sovereign immunity and the case should not have been dismissed on that basis. If, in fact, the case did not state a cause of action, as held by the trial court, the matter should have been subject to a motion to strike for failure to state a cause of action. I would return the matter to the trial court for further consideration on a motion to strike. Second, in my view, this case does state a cause of action. The trial court held that an environmental impact evaluation was only required "for activities funded by or proposed to be undertaken by the state. The [2013 Comprehensive Energy Strategy for Connecticut (comprehensive energy strategy) issued by the department] was neither." The court further held that "[b]ecause approval of the [comprehensive energy strategy] is not an action which may significantly affect the environment, as that phrase is defined in [General Statutes] §§ 22a-1b (c) and 22a-1c, the plaintiff has failed to state a claim under the [Environmental Policy Act (policy act), General Statutes § 22a-1 et seq.]." Section 22a-1a-1 (2) of the Regulations of Connecticut State Agencies, however, defines "action" as, inter alia, "other proposed activity for which an agency exercises judgment or discretion as to the propriety of that action." This language is derived from § 22a-1b (c), which requires an agency to make a detailed written evaluation of any environmental impact "before deciding whether to undertake or approve such action."[1] Thus, the agency's approval of an activity or sequence of proposed activities constitutes an "action" under the regulations if the activity may significantly affect the environment. Therefore, in my opinion, the present case does state a cause of action and should not have been dismissed. Rather, I would remand the matter to the trial court for a determination of whether the activity may significantly affect the environment. Therefore, I respectfully dissent.

I

I will not repeat the facts and procedural history since they are accurately reflected in the majority opinion. I will only reference the facts as they may relate to this dissenting opinion.

The trial court held that since the complaint did not state a cause of action under the policy act, "[t]herefore, the state's sovereign immunity remains undisturbed,

and the court lacks subject matter jurisdiction. Consequently, the plaintiff's complaint is dismissed." (Footnote omitted.) A determination of the trial court's subject matter jurisdiction presents a question of law. *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 276, 105 A.3d 857 (2015). This court reviews de novo a trial court's ruling on a motion to dismiss. Id., 276–77. "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 314 Conn. 433, 447, 102 A.3d 32 (2014).

The policy act is a supplement to the Connecticut Environmental Protection Act, General Statutes § 22a-14 et seq. *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 66, 441 A.2d 68 (1981), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 556, 800 A.2d 110 (2002). The policy act contains the procedural requirements for ensuring that state actions receive a "thoughtful and meaningful consideration of environmental factors." Id., 68. It provides in relevant part that agencies responsible for the primary recommendation or initiation of actions that may significantly affect the environment make a written evaluation of the environmental consequences of the proposed action. See General Statutes § 22a-1b (c). "[A]n impact statement is required whenever the project will arguably damage the environment." *Manchester Environmental Coalition* v. *Stockton*, supra, 67. "The determination of whether an action may significantly affect the environment is a legal issue, involving the interpretation of [§§ 22a-1b and 22a-1c], which can be decided by a court." (Internal quotation marks omitted.) Id., 68 n.20.

The complaint in the present case asserts jurisdiction "pursuant to [General Statutes] § 22a-16." The defendants have conceded that this provision confers standing on any person in a case brought under the policy act, irrespective of whether such person is classically aggrieved for the purpose of standing. As we stated in *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 64 n.15, the policy act does "not require aggrievement as a prerequisite to challenging the preparation, or lack of preparation, of an impact statement." Because the policy act is " '[i]n furtherance of and pursuant to' " §§ 22a-1 and 22a-15, and because it was intended to be supplemental to the Connecticut Environmental Protection Act, standing to raise the procedural issues governed by the policy act is conferred by § 22a-16, and it is granted to the same persons on whom standing is conferred to raise substantive issues under the Connecticut Environmental Protection Act. (Internal quotation marks omitted.) Id., 65–66. That is, " 'any person' " has standing to bring an action under the policy act to challenge a failure to prepare an environmental impact evaluation. Id., 57. By conferring stand-

ing on "any person" to challenge the failure of an agency to prepare an impact statement, § 22a-16 stands as an explicit waiver of sovereign immunity with respect to such actions. In my view, therefore, it was incorrect for the trial court to grant the motion to dismiss on the basis of sovereign immunity. I would, therefore, remand the case to the trial court in order to consider the matter under the proper standard.

Although the defendants conceded in the trial court that § 22a-16 waives sovereign immunity for a policy act violation, they contended, nonetheless, that sovereign immunity is waived only for claims properly cognizable under the policy act, and not for claims that fail to state a legally sufficient policy act claim. Thus, they styled their motions as motions to dismiss, challenging the jurisdiction of the trial court on sovereign immunity grounds. The gravamen of the motions, however, are assertions that the complaint fails to state a claim under the policy act on which relief can be granted, which is properly the subject of a motion to strike.

In reviewing the motion to strike, a court should "construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117, 889 A.2d 810 (2006). If the facts set forth in the complaint "would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Id., 117–18. Moreover, the "pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 350, 71 A.3d 480 (2013). Therefore, the policy act specifically waives sovereign immunity. The question is not one of jurisdiction, but rather whether the complaint stated a cause of action.

## II

In my view, the complaint does state a claim under the policy act on which relief can be granted. The standard of review of a trial court's conclusions on a matter of law is de novo. Id. Section 22a-1b (c) provides in relevant part that "[e]ach state department, institution or agency responsible for the primary recommendation or initiation of actions which may significantly affect the environment shall in the case of each such proposed action make a detailed written evaluation of its environmental impact before deciding whether to undertake or approve such action . . . ." Section 22a-1c, in turn, defines " 'actions which may significantly affect the environment' " as "individual activities or a sequence of planned activities proposed to be undertaken by state departments, institutions or agencies, or funded in whole or in part by the state, which could have a major impact on the state's land, water, air . . . or other environmental resources, or could serve short term to the

disadvantage of long term environmental goals. . . ." The majority holds that "for purposes of § 22a-1b (c), activities must both (1) be 'proposed to be undertaken by state departments, institutions or agencies, or funded in whole or in part by the state,' and (2) potentially 'have a major impact on the state's' environmental resources. The most natural reading of the phrase 'proposed to be undertaken by an agency or agencies' is that the proposed or initiated activity that will allegedly have a major impact on the state's environment ultimately must 'be undertaken by an agency or agencies.' . . . Thus, activities that are proposed by state actors, but which are ultimately performed by private entities, do not constitute 'actions which may significantly affect the environment' for purposes of § 22a-1b (c)." (Citation omitted; emphasis omitted.) While I concede that the majority's interpretation of the statute is a reasonable one, I find equally persuasive the interpretation of the plaintiff that once the state engages in an action that may potentially affect the environment, said action will require an environmental impact evaluation. The definition of the terms "action" and "proposed or initiated activity" are therefore crucial to the inquiry. In other words, does the proposed or initiated activity ultimately have to be performed by a state agency and thus, necessarily meet the requirements of the statute, or is it enough to meet those requirements that the state initiates the mechanism by which the acts are ultimately performed by a private entity? I would conclude that, in light of the two reasonable interpretations, the statute is ambiguous. Therefore, I would resort to extratextual sources, including the regulations, which is appropriate under General Statutes § 1-2z. Although not expressly stating in the opinion that the statute is ambiguous, the majority's reliance upon legislative history and the regulations would suggest that it also finds the statute to be ambiguous.

Shortly after the policy act was enacted, the department promulgated regulations that drew upon §§ 22a-1b (c) and 22a-1c to define in greater depth the type of "actions which may significantly affect the environment." General Statutes § 22a-1b (c). I respectfully disagree with the majority's position that "[t]hus, activities that are proposed by state actors, but which are ultimately performed by private entities, do not constitute 'actions which may significantly affect the environment' for purposes of § 22a-1b (c)." If that were the case, there would have been no need for the phrase "activities proposed to be undertaken by state [actors] . . . ." General Statutes § 22a-1c. The legislature could have merely stated that if the state is not paying for the project in whole or in part, any other actions of state departments are not actions which affect the environment. Instead, the legislature used the additional phrase of "activities proposed to be undertaken by state [actors] . . . ." General Statutes § 22a-1c. If the inter-

pretation of the statute is the one proposed by the majority, this statutory language is superfluous because, according to both the majority and the trial court, unless the activity is funded in whole or in part by the state, it does not affect the environment and, therefore, an environmental impact evaluation is not necessary. The use of the word "or" in § 22a-1c belies this interpretation. Rather, as I view the relevant language in § 22a-1c, the definition of " 'actions which may significantly affect the environment' " should be read to include those projects either funded in whole or in part by the state, or those in which state actors proposed action. The department's regulatory definition, is set forth in § 22a-1a-1 (2) of the regulations, which provides in relevant part that "[a]ction means an individual activity or a sequence of planned activities initiated or proposed to be undertaken by an agency or agencies, or funded in whole or in part by the state. . . ." Thus, under the applicable regulatory definition, an "action" is an "activity" or "a sequence of planned activities" that are "initiated" or "funded" by an agency. Regs., Conn. State Agencies § 22a-1a-1 (2). The "proposed to be undertaken" language in § 22a-1a-1 (2) of the regulations is taken from § 22a-1c. The "initiated" language in § 22a-1a-1 (2) of the regulations is taken from the "initiation of actions" language of § 22a-1b (c).

Section 22a-1a-1 (2) of the regulations also includes within the applicable definition of "action" any "other proposed activity for which an agency exercises judgment or discretion as to the propriety of that action." This language is derived from General Statutes § 22a-1b (c), which requires an agency to make a detailed written evaluation of environmental impact "before deciding whether to undertake or approve such action." Thus, an agency's approval of an activity or sequence of proposed activities constitutes an "action" under the regulations if the activity may significantly affect the environment.

The essence of an "action," therefore, is an activity or sequence of planned activities that may have a significant impact on the environment. But the activity or sequence of activities must be triggered by an act of a state department, institution or agency. Under the department's regulations, activities are triggered by state action when an agency proposes the activity or sequence of activities, when an agency initiates the activities by an authorizing act of approval or by other acts of implementation, or when an agency funds the activity, in whole or in part. See Regs., Conn. State Agencies § 22a-1a-1 (2).

The majority claims that such a reading "would both require the insertion of words such as 'to be undertaken by any person or entity' into § 22a-1a-1 (2) of the regulations and General Statutes § 22a-1c and render the existing phrase 'to be undertaken' superfluous." I

respectfully disagree. In my view, the regulations inform the meaning of the word action and the activity necessary for the requirement of an environmental impact evaluation to be instituted. If the state agency is the entity proposing the plan and exercising judgment over the plan, the regulations make it clear that an environmental impact evaluation should be completed regardless of what entity, public or private, ends up paying for the project. I further disagree with the majority's position that § 22a-1a-1 (2) of the regulations "applies only to activities that will be undertaken or funded by a state actor." The majority further concludes that "because the activities that the plaintiff alleges will cause major pollution will be undertaken by private parties, the defendants' activities in proposing and approving those activities do not fall within this definition regardless of whether they are discretionary or ministerial." Thus, my disagreement with the majority is regarding the "activities proposed to be undertaken by [the] state" language in General Statutes § 22a-1c. The majority views the activities as the actual project, whereas, in my view, the activities are the review and preparation of the plan upon which the ultimate project may be commenced. Indeed, as I have suggested previously in this opinion, if a state agency is involved in the project it obviously is either funded in whole or in part by the state. The majority's interpretation renders the "activities proposed to be undertaken by [the] state" language in § 22a-1c superfluous.

Moreover, I do not believe that the department's regulations run afoul of our jurisprudence by extending beyond the bounds of the statute. Rather, in my view, the regulations promulgated by the department inform the meanings of the relevant statutory provisions. Otherwise, the phrase "individual activities or a sequence of planned activities proposed to be undertaken by state departments, institutions or agencies" in General Statutes § 22a-1c becomes irrelevant, because all actions of the state are funded in whole or in part by the state. The language is superfluous unless "activities" and "sequence of planned activities" means the initiation of a plan that may be carried out by either the state or private entities. One of our fundamental rules of statutory construction is that we should construe relevant provisions so as to give meaning and purpose to every word in the statute. Respectfully, in my view, the majority's interpretation of this environmental statute does not adhere to that tenet.

The defendants are bound by validly enacted regulations in deciding whether to prepare an environmental impact evaluation. "Administrative regulations have the full force and effect of statutory law and are interpreted using the same process as statutory construction, namely, under the well established principles of . . . § 1-2z." (Internal quotation marks omitted.) *Sarrazin* v. *Coastal, Inc.*, 311 Conn. 581, 603, 89 A.3d 841 (2014).

"[R]egulations are presumed valid and, unless they are shown to be inconsistent with the authorizing statute, they have the force and effect of a statute." *Travelers Ins. Co.* v. *Kulla*, 216 Conn. 390, 399, 579 A.2d 525 (1990).

Because the term "initiated" is not defined in the relevant statute or in the department's regulations, it is to be given its plain and ordinary meaning under the rules of statutory construction. "In interpreting the language of a statute, the words must be given their plain and ordinary meaning and their natural and usual sense unless the context indicates that a different meaning was intended." (Internal quotation marks omitted.) *Blumenthal* v. *Barnes*, 261 Conn. 434, 460 n.37, 804 A.2d 152 (2002).

The plain meaning of the word "initiate" is "to cause or facilitate the beginning of" or "set going . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2011). An entity initiates an activity, therefore, when it takes action to set a process in motion.

All agency action, of course, is authorized or directed in one way or another by the legislature. As echoed by the trial court in the present case, "an administrative agency possesses no inherent power. Its authority is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 155, 788 A.2d 1158 (2002). Legislative directives, however, cannot usually be implemented in the absence of discretionary determinations by the agencies. When an agency acts on its legislative authority to authorize or implement activities that may have a significant impact on the environment, the authorization or implementation of such activities is an "action" under the policy act and its implementing regulations.

The state agency or department initiates an action by providing the requisite authorization or approval of the activity or by engaging in other acts of implementation necessary for the activity or activities to be undertaken. If the activity or activities cannot be undertaken in the absence of such agency approval or implementation, the acts of approval and implementation are, in my view, acts of initiation.

Likewise, the word "proposed" is not defined in the statute or in the department's regulations. The plain meaning of the word "propose," however, is "to form or put forward a plan or intention" or "to set forth for acceptance or rejection . . . ." Merriam-Webster's Collegiate Dictionary, supra. A proposal, therefore, is in the nature of a recommendation. Indeed, the department's regulations indicate that the "agency responsible for the primary recommendation or initiation of actions is considered [the] sponsoring agency . . . ." Regs., Conn. State Agencies § 22a-1a-2. The word "propose"

in General Statutes § 22a-1c does not mean to mandate or require. A "proposal" is the "act of putting forward or stating something for consideration . . . ." Webster's Collegiate Dictionary, supra. As aptly stated in *New Haven* v. *Pac*, Superior Court, judicial district of New Haven, Docket No. CV-83-0279985-S (December 16, 1991) (5 Conn. L. Rptr. 356, 360), "[a]n environmental impact statement is required from the state when *it* initiates or recommends the action; the state must be the proponent." (Emphasis in original.) Moreover, by its very nature, a proposal is a recommendation made to another person or entity. In the context of the regulations quoted previously in this opinion, it may be made by the proponent to another agency or instrumentality of government, to the public, to the governor, or to the legislature. There is nothing in the policy act to suggest that agency proposals or recommendations made to the legislature are exempt from policy act coverage. As long as the state agency's recommendation to the legislature requests authority to initiate, approve, or implement an activity or activities that may significantly affect the environment, it is a recommendation or proposal to undertake or initiate an "action" within the meaning of the policy act.

We have construed environmental protection statutes liberally. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 157, 676 A.2d 795 (1996). Such statutes are "remedial in nature and should be liberally construed to accomplish their purpose." *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 57. The purpose of the policy act cannot be fulfilled if activities that will adversely affect the environment are attributed to the legislature, and not to the agencies that propose them for legislative approval. Thus, when an agency proposes an activity or sequence of planned activities that may significantly affect the environment, it must perform an environmental impact evaluation to accompany the proposal. "An environmental impact evaluation shall be prepared as close as possible to the time an agency proposes an action. The evaluation shall be prepared early enough so that it can practically serve as an important contribution to the decision-making process . . . ." Regs., Conn. State Agencies § 22a-1a-7 (b).

The trial court's memorandum of decision in the present case contains no discussion of what constitutes an action by an administrative agency or executive department that may "significantly affect the environment." Instead, the trial court focused on the act of the legislature approving the comprehensive energy strategy. It held that such legislative approval is not an "action" under the policy act. In substance, the trial court concluded that, "[u]ltimately, the [p]olicy [a]ct only requires an [environmental impact evaluation] for activities funded by or proposed to be undertaken by the state. The [comprehensive energy strategy] was neither. Because approval of the [comprehensive energy strat-

egy] is not an action which may significantly affect the environment, as that phrase is defined in §§ 22a-1b (c) and 22a-1c, the plaintiff has failed to state a claim under the [p]olicy [a]ct." The discussion of the trial court preceding this holding suggests that the department, through the authority, played no role in formulating and proposing a natural gas conversion energy strategy, initiating the strategy through a series of discretionary determinations, approving and modifying the expansion plan, and issuing orders necessary for its implementation. According to the trial court, "the defendants simply followed the legislative duties imposed upon them."

The trial court proceeds as if the department performed a series of ministerial duties directed by the legislature with no authorization to make discretionary determinations, especially determinations crucial to whether a natural gas conversion plan would ever by implemented. Implicit in the trial court's holding is that the broad statement of objectives enunciated by the legislature could be translated into a concrete natural gas conversion plan, and be implemented, in the absence of discretionary determinations by an agency or agencies. I disagree with this interpretation. The department conceived of and implemented the natural gas conversion program in a way that is different only in form, but not in substance, from the way that administrative agencies normally formulate and implement programs authored by the legislature. Typically, the legislature devises a program by stating broad goals, objectives, and strategies, and it delegates to one or more agencies the authority to fashion a program that is consistent with the legislative objectives. The authority of the agency to implement the program is usually contained in the same legislation. Here, the legislature proceeded along the same path, but it did so in two separate pieces of legislation rather than one. In 2011, the legislature delegated to the department the authority to: (1) develop a plan setting forth the essential elements of a program to convert energy users to natural gas; and (2) recommend legislative and administrative actions to implement the plan. See Public Acts 2011, No. 11-80, § 51; see also General Statutes § 16a-3d. The department developed a natural gas conversion plan with specific elements and recommendation for implementation. In 2013, the legislature approved the department's plan and the administrative steps proposed to implement it, and it delegated to the department the authority to implement the plan as proposed. See Public Acts 2013, No. 13-298, § 51 (c); see also General Statutes § 16-19ww (d). Although the legislature proceeded in two steps rather than one, it nevertheless delegated to the department the authority to make discretionary determinations. Without these determinations, the program would neither have been developed nor would it have been implemented. I disagree with the trial court's analysis because, in my view, the trial

court focused on the acts of the legislature and not on the discretionary determinations and other implementation activities of the department. The conversions to natural gas that are at the heart of this case could not have been implemented without the department's actions. Therefore, I would conclude, unlike the trial court, that the department initiated the proposed plan and had wide discretion in both the acceptance and administration of the plan. Consequently, the actions of the department were far from ministerial and should have required the court to evaluate any potential impact on the environment.

The trial court classified the department's actions as ministerial acts of adherence to strict and narrowly tailored legislative commands. In my view, the record shows otherwise. The legislature had neither the technical expertise nor the inclination to make the types of determinations it delegated to the department. As is customary, it relied on the expertise of the administrative agencies to make the determinations necessary to implement a natural gas conversion program. The determinations of the department, acting through the authority, were essential prerequisites to implementation of the plan and, as such, they were acts of "initiation" within the meaning of § 22a-1b (c).

The majority concludes that "[i]n the present case, the defendants have not proposed to undertake or to fund the activities that the plaintiff alleges will have a major impact on the state's environmental resources, namely, the construction of new gas pipelines in the state resulting in the increased discharge of methane gas into the atmosphere. Rather, these activities will be undertaken and funded by the local distribution companies, which are private entities. Accordingly, we conclude that the trial court properly granted the defendants' motions to dismiss on the ground that the requirement of an environmental impact evaluation in § 22a-1b (c) does not apply to their activities in the present case." I respectfully disagree. The difference in opinion is that the majority reads the statute to require that the state either undertake or fund the activities. I am not sure how the word undertake is different from the word funding because, in either event, the state is going to pay for the project. In my view, the statute requires an environmental impact evaluation where, as here, the state has made a proposal to a private entity or group of entities, and has used its discretion to determine how the ultimate project is to be constructed. Any other construction would render the term "initiated" in § 22a-1b (c) superfluous.

In 2011, the legislature mandated that the department propose a comprehensive energy strategy for the state. See Public Acts 2011, No. 11-80, § 51 (a); see also General Statutes § 16a-3d. As part of that comprehensive energy strategy, the department proposed the elements

and contours of a natural gas conversion plan, and it proposed a series of administrative actions that placed the department at the center of the implementation process.

The department's proposal requested authority to review the plan from private gas companies, to determine its consistency with the comprehensive energy strategy, to modify the plan it had received, and, through the authority, to make the changes to the regulatory structure necessary to ensure the plan's feasibility and, ultimately, to approve it. In short, the department proposed a sequence of activities leading to performance of the conversions by private gas companies. This sequence of activities was first proposed by the department. None of the activities were mandated, or even mentioned, by the legislature in 2011. See Public Acts 2011, No. 11-80, § 51. Had the department not fashioned a natural gas conversion plan, and had the department not proposed the administrative steps to implement it, there would have been no plan for the legislature to approve or endorse. In 2013, the legislature gave the department discretion to review the plan it received from the gas companies in order to determine whether it was consistent with the comprehensive energy strategy. The department approved the plan only after the gas companies made numerous revisions that were directed by the department. Much of the gas companies' plan is the work of the department. If the department had not made the consistency determination, the plan would not have moved forward to final approval by the authority. Number 13-298, § 51 (c), of the 2013 Public Acts provides in relevant part that "[i]n the event that the commissioner determines that the [gas companies'] plan is consistent with the [c]omprehensive [e]nergy [s]trategy . . . the [authority] shall . . . approve or modify the plan . . . ." There would have been no plan to "approve or modify" had the department not made the threshold determination of consistency. Moreover, the legislative delegation to the authority to "approve or modify" the plan was extremely broad. The authority had almost unfettered discretion to condition its approval on modifications by the gas companies to their natural gas conversion plan. An agency's power to approve conditionally is inherent in the power to approve or disapprove. See *Connecticut Fund for the Environment, Inc.* v. *Environmental Protection Agency*, 672 F.2d 998, 1006 (2d Cir.), cert. denied sub nom. *Manchester Environmental Coalition* v. *Environmental Protection Agency*, 459 U.S. 1035, 103 S. Ct. 445, 74 L. Ed. 2d 601 (1982). This broad discretion provided the authority with the power to influence and shape the gas companies' plan and the activities necessary to implement it. Thereafter, the authority approved and modified the gas companies' plan. It also made a series of discretionary determinations to change the rate structure in ways that were necessary to the plan's feasibility, including

determinations to lower the hurdle rate for recoupment of costs by the gas companies. Had the authority not approved the gas companies' plan as modified, and had the authority not made these other determinations, the gas companies' conversion plan could never have been implemented. The authority's actions, as effectuated in twenty-two separate orders, were a major part of the implementation plan. Thus, the department proposed the primary recommendation for activities that may significantly affect the environment, making it the "sponsoring agency" for purposes of § 22a-1a-2 of the Regulations of Connecticut State Agencies. It also initiated the activities, after legislative approval, by making discretionary determinations that were essential to permitting the gas companies to carry out their plan. The department's actions, through the authority, were "actions" within the meaning of the policy act and its implementing regulations. In my view, the department's consistency determination is much the same as the determination made by the Department of Planning and Energy Policy in *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 54–55. In that case, the Department of Planning and Energy Policy was required to determine that the project at issue "is not inimical to any statewide program objectives." Id., 55. That determination was a prerequisite to the approval of the project by the Commissioner of Commerce. Here, the department's consistency determination was a prerequisite for approval of the gas companies' plan by the authority. Therefore, I would conclude that the defendants' involvement in the gas project constituted "action" within the meaning of the policy act.

### III

The complaint alleges that if the defendants had performed an environmental assessment, they would have determined that the natural gas expansion plan will have a significant effect on the environment. The complaint also alleges that the plan, which proposes to convert 300,000 additional homes to natural gas and to build 900 miles of new gas lines, will significantly increase the amount of methane, a greenhouse gas, that is emitted each year by Connecticut's gas companies. Currently, it is alleged, the natural gas distribution system in Connecticut is leaking more than 200,000 metric tons of methane per year while serving 415,000 customers. Since the department's plan would almost double the number of gas customers, increased methane emissions, it is alleged, would result and their extent should have been assessed and, if necessary, moderated.

As alleged in the complaint, the impact of methane is considerably more serious than that of carbon dioxide. The United States Environmental Protection Agency has concluded that methane is more than twenty times as effective as carbon dioxide in trapping heat in the atmosphere. For this reason, Connecticut

has established targets for decreased greenhouse gas emissions in the state's Global Warming Solutions Act. See Public Acts 2008, No. 08-98, § 2.

The complaint also alleges that the department's plan to build 900 miles of new gas lines requires construction activities that will adversely impact the state's freshwater wetlands, soils, water, groundwater aquifers, trees and wildlife habitat. The complaint states that these consequences, like the increased methane emissions, should also have been assessed and, if necessary, moderated.

All of these activities were undertaken with no environmental impact evaluation. As a result of the majority decision today, the state will be able to avoid an environmental review of future projects by following the same process it followed in the present case. Such a result is not contemplated by the policy act. The policy act was designed to ensure a thoughtful and meaningful consideration of environmental issues. The procedures mandated by the policy act should have been invoked in this case.

In my view, therefore, the decision of the trial court dismissing the complaint for lack of subject matter jurisdiction should be reversed. The matter should be remanded to the trial court with instructions consistent with a determination that the defendants proposed and initiated an "action" within the meaning of the policy act and for further proceedings to determine whether this "action" will arguably have a significant effect on the environment.

Accordingly, I respectfully dissent.

[1] The majority maintains in footnote 13 of its opinion that "[w]e do not believe that it was simply redundant for the legislature to make it clear that an environmental impact assessment is required *either* when a state actor undertakes the activity *or* when a private actor undertakes the activity, but the activity is funded by the state. In any event, it is far from clear that the state funds all activities by state actors, in whole or in part. We note, for example, that the federal government frequently funds state programs and projects, and, without having performed a comprehensive review of those activities, we are not prepared to say that the state contributes funding to all of them." (Emphasis in original.)

I continue to maintain, respectfully, that pursuant to § 22a-1a-1 (2) of the regulations, the word "action" includes "other proposed activity for which an agency exercises judgment or discretion as to the propriety of that action." The definition does not state that ultimate action must be undertaken by an agency or agencies.

The majority accurately highlights one of the problems in this case. The record is inadequate to determine the nature of the funding in this case. See footnote 13 of the majority opinion. Certainly, in the sense that the state is involved, the state funds payment for its employees reviewing the projects and any experts whom the state may consult. Although the record reflects the private funding of the project, we do not know if the state was being reimbursed for the costs in reviewing the project. This issue relates to the issues discussed in part I of this dissenting opinion. In my view, the matter should be returned for a factual hearing regarding the full nature of the funding in this matter. Otherwise, we are resorting to speculation regarding the true nature of this project and how facts that are developed at a hearing may relate to the appropriate interpretation of the statute.